## O. W. ANNIS v. MAGGIE BELL.

(Filed Feb. 8, 1901.)

BASTARDY—*Form of Verdict is Guilty or Not Guilty.—Finding of Amount By the Court Dependent Upon the Verdict or Decision of Guilty or Not Guilty.* Where, in an action for bastardy, the case is tried by a jury in the probate court, and the jury return a verdict of guilty, this will authorize the court in assessing a judgment against the defendant, in such sum or sums, payable in such manner as the court shall direct, for the support and maintenance of the child, and for the costs, but such finding of the court is dependent upon the verdict of the jury, and if an appeal is regularly and legally taken, to the supreme court, this appeal will stay and suspend the finding of the court as to the judgment for the maintenance of the child, until the final decision of the cause against the defendant, and a person in whose favor a judgment in such case is rendered, for the support and maintenance of the child, is not, during the pendency of said appeal, a creditor within the meaning of the statute, so as to enable such person to question or attack a conveyance of personal property from the defendant in bastardy proceedings, to a third party on grounds of fraud.

(Syllabus by the Court.)

*Error from the District Court of Payne County; before John H. Burford, District Judge.*

*Sterling P. King,* for plaintiff in error

*Robert A. Lowry,* for defendant in error.

### STATEMENT OF THE CASE.

This is an action commenced in the district court of Payne county, by Maggie Bell, against O. W. Annis, to recover damages for property sold by him, as sheriff, under an execution, issued out of the probate court of Payne county, in the case of the *Territory of Oklahoma v.*

*H. O. Bell*, on the charge of bastardy. On the 5th day of June, 1897, the said H. O. Bell was brought into court on the complaint of Ida L. Dillman, charging him with bastardy, and was by the court held in bonds of one thousand dollars to answer to said charge at the next term of the said court. On the 19th day of July, 1897, being one of the regular days of the July term, of said court, for the year 1897, the case being called the defendant demanded a jury, which was granted, and a jury called, empannelled and sworn to try the cause. After hearing the evidence, arguments of counsel, and being fully advised in the premises, the jury returned into court the following verdict:

"The *Territory of Oklahoma v. Hubert O. Bell.* We the jury duly sworn and empannelled to try the issues in the above entitled cause, do upon our oaths find the defendant guilty as charged.    GEORGE H. McLAIN, Foreman."

July 21st, 1897, defendant files motion in arrest of judgment, which is overruled by the court. Defendant then files motion for a new trial. On July 26, 1897, the court overrules said motion for a new trial, and the court further finds that Ida L. Dillman have and recover of the defendant, Hubert O. Bell, the sum of $75.00 on January 1, 1898, and the sum of $50.00 on the first day of January, annually, thereafter, for a period of fourteen years, making the total sum of $725.00, the said money to be used for the support and maintenance, care and comfort, of said bastard child, and the said defendant is hereby ordered to secure the payment of said sum of money within ten days from date. From which verdict and judgment of the court an appeal was taken to the supreme court of the Territory. Afterwards, to-wit, on March 19, 1898, an

execution was issued out of the said probate court, against the said Hubert O. Bell, for the sum of $725.00 and delivered to the sheriff, and on which a levy was made on the personal property in controversy in this suit, and on the first day of August, 1898, said property was sold by said sheriff, and the plaintiff in the court below, the defendant in error here, Maggie Bell, brings this suit against the plaintiff in error, claiming the property levied upon and sold under said execution was her property, and not the property of H. O. Bell. The defendant below files an answer of general denial, the cause came on for trial in the district court, and a jury was regularly called, empanelled and sworn to try the cause; after both sides had introduced their evidence, and rested the case, it was mutually agreed in open court that the court should discharge the jury, from the consideration of the case, and the case was submitted to the court for a decision upon the evidence introduced; thereupon the court found the issues in favor of the plaintiff, and rendered judgment in her favor for the sum of two hundred dollars, to which defendant excepted. Motion for new trial was made and overruled, and exceptions saved, and defendant appealed and brings the case here for review.

Opinion of the court by

IRWIN, J.: On the question of ownership of the cattle in question in this suit at the time of levy and sale on execution, the court below has found for the plaintiff, and that she was the owner at that time; and, on examination of the record, it is found that there is evidence which reasonably tends to sustain this finding; and, under the well established rule of this court, this finding will not be disturbed; and, in fact, there seems to be no contention

on this question, so that the only question necessary to be considered in this case is, Was the execution issued out of the probate court a protection to the sheriff to the extent that it would exonerate him from liability in damages for the levy made under it? And this necessarily brings us to a consideration of the question, Was the person in whose favor the execution issued a creditor within the meaning of the statute so that she could call in question the *bona fides* of the sale between the parties H. O. Bell and Maggie Bell? By sec. 2623 of the statute of 1893, such a transfer of personal property as is shown by the evidence in this case, would be fraudulent and void as against creditors of the vendor. If the person claiming to be a judgment creditor of H. O. Bell, in this case was in law such a creditor, then this transfer between Bell and his wife was fraudulent and void. If she was such a creditor, then it was by virtue of the decision rendered in the probate court, in the bastardy proceedings. That brings us to the consideration of the question, Was that a final judgment? If so, it makes her a judgment creditor of H. O. Bell; otherwise, not.

A judgment, it seems to us, must mean the ultimate conclusion of the court, or the final decision of the issues joined between the parties. The supreme court of the state of Illinois, in a case reported in the 47 Ill. at page 167, have said:

"A final decision is one from which no appeal or writ of error can be taken."

Blackstone defines a final judgment:

"In practice a judgment which puts an end to an action at law by declaring that the plaintiff either has or has not entitled himself to recover the remedy he sues for." (3rd. Blackstone's Commentaries, 398.)

"A judgment which cannot be appealed from, which is perfectly conclusive upon the matter adjudicated." (24 Pick. 300.)

Mr. Black in his law dictionary defines a final judgment, "as one which puts an end to the action, or disposes of the whole case, finally and completely by declaring, either that the plaintiff is entitled to recover a specific sum or that he cannot recover, and leaving nothing to be done but the execution of the judgment." (Black's Law Dictionary, page 654.)

The code of the state of New York declares:

"A judgment is the final determination of the rights of the parties in the action." (N. Y. Code, sec. 245; Code of Civil Procedure, Cal., sec. 577; Code of Civil Procedure, Dakota, sec. 228.)

The supreme court of Nebraska has said:

"No judgment or order which does not determine the rights of the parties in the case, and preclude further inquiry, as to their rights in the premises, is a final judgment." (7 Nebraska, 398.)

Under the law of these decisions it will be seen that what was done in the probate court of Payne county in the bastardy proceedings before it, was not a final decision, or a final judgment between the parties, and if not then Ida L. Dillman, in whose favor the execution was issued, was not a creditor of H. O. Bell, within the meaning of the law. The action taken in the probate court was but one of the steps necessary to be taken to determine whether she was a creditor or not. The final decision of this was in the hands of the supreme court. While it was true, as contended by counsel for appellant, that the appeal does not stay the execution unless the bond is filed, still, the execution would only protect the officer, while

acting within the scope of its terms, or the orders therein contained. The order in that execution was, to seize the property of H. O. Bell; this would not authorize him to, or protect him in the seizure and sale of the personal property of a third person, or of any person not named in the writ. Now it seems to us that it is immaterial whether the transfer from Bell to his wife of the property in controversy, was fraudulent or not, unless the party for whom the sheriff acted, in levying the execution, to-wit: Ida L. Dillman, was in a position where she could legally raise that question. The fraud of that transfer could be no protection to the sheriff for seizing property which he was informed was the property of a third person, unless he, or the person for whom he acted, had the right to raise this question. If the sheriff was desirous of protecting himself, in the premises, he could have demanded indemnity from the person claiming to be a judgment creditor, and in whose favor this execution was issued, before he made the levy and sale. It seems to us the judgment of the probate court, which was not final by reason of a pending appeal, cannot make a person a judgment creditor so as to question or attack a transfer of personal property on the grounds of fraud, where no debt existed independent of said action of the probate court, or where the debt depended entirely upon the decision of such court. Another reason why we think the proceedings in the probate court cannot be regarded as a judgment on which an execution could properly issue, is, that any finding of the probate court as to the necessary and proper amount for the maintenance of the bastard child, must depend upon the preliminary decision of guilty or not guilty of the charge of bastardy. This must first be set-

tled finally and conclusively. In this case the jury had
returned a verdict of guilty, and the probate court had
pronounced judgment upon the verdict, but from this de-
cision of the court the defendant had a legal right to ap-
peal, and he had availed himself of this right, and per-
fected his appeal, and whether this finding of guilty in the
probate court was final, or not, depended upon the action
of the supreme court, to which the appeal had been taken,
and where it was then pending. It could only be final
when affirmed by the supreme court. Any other rule, it
seems to us, would render the appeal useless, and the
law of appeal nugatory. It seems to us that prior to a
final decision of guilty, and a final order, "charging the
defendant with the maintenance of the child, in such sum
or sums and in such manner as the court shall direct,"
in accordance with the requirements of the statute, the re-
lation of debtor and creditor cannot exist in this kind of
an action. The main issue in the case is whether the
defendant is guilty or not guilty of being the father of
the bastard child; that issue and the decision thereon
was appealed from the decision of the probate to the su-
preme court, and the finding of the sum or sums neces-
sary for the maintenance of such child was merely an in-
cident to this issue, and while such appeal was pending
and undetermined in the supreme court, this finding of the
probate court was necessarily suspended.

In the case of *Kitch v. Schoenwell*, 80 Ind. page 74, the
supreme court says

"The fixing of the amount to be paid was not a matter
occurring at the trial, but a part of the proceeding and
judgment of the court after the trial has been concluded,
and the verdict returned by the jury."

In *Scott v. The State*, 102 Ind. 278, the court says:

"It has been held and correctly held, that in a case like this, the trial proper ends with the finding that the defendant is the father of the child, and hence no question will be raised on a question subsequent to such finding, by assigning such ruling as a cause for a new trial."

If the property actually belonged to the plaintiff at the time of the levy and sale, by the sheriff, and on this question we regard the decision of the court below as conclusive, then she had a right of action against some one for its wrongful conversion, and this action could only be maintained against the party who actually took and converted the same, which in this case was the sheriff; and as we before observed, if the sheriff had availed himself of the protection which the law gave him, and had demanded an indemnifying bond, before levying, he would have been amply protected; if he did not do so, then he acted in the matter at his peril.

As we find no error in the record, the decision of the court below is affirmed.

Burford, C. J., having presided in the court below, not sitting; all of the other Justices concurring.